Filed 6/26/13

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----


| | |
|---|---|
| THE PEOPLE, | C069826 |
| Plaintiff and Respondent, | (Super. Ct. No. SF107668A) |
| v. | |
| VERNON LOUIS WILCOX, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Joaquin County, Anthony P. Lucaccini, Judge.  Affirmed.

Benjamin Owens, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Charles A. French, Julie A. Hokins, and Doris A. Calandra, Deputy Attorneys General, for Plaintiff and Respondent.


Numerous felonies are no longer punished by confinement in state prison, but are instead punished by confinement in county jail for the term prescribed for the underlying

1

offense. (Pen. Code, § 1170, subd. (h)(1), (2)).[1] Felons sentenced to county jail may have a concluding portion of the county jail term suspended and be placed under the mandatory supervision of the county probation department. (§ 1170, subd. (h)(5)(B)(i).) Defendants sentenced to county jail are not subject to parole or any other form of supervision upon the conclusion of their term. (§§ 3000 et. seq., § 3450; *People v. Cruz* (2012) 207 Cal.App.4th 664, 672.)

These unique circumstances are born of the Criminal Justice Realignment Act of 2011 (Realignment Act) (Stats. 2011, 1st Ex. Sess. 2011–2012, ch. 15, § 1).

The Realignment Act's sentencing scheme applies only to defendants "sentenced on or after October 1, 2011." (§ 1170, subd. (h)(6).) The question before us is whether the Realignment Act applies when the trial court imposes a state prison sentence and stays execution before October 1, 2011, and executes the sentence after that date.

In *People v. Clytus* (2012) 209 Cal.App.4th 1001, review denied January 16, 2013 (*Clytus*), Division Eight of the Second District Court of Appeal held when a state prison sentence imposed and stayed before October 1, 2011, but executed on or after that date, a trial court "has no discretion to send to prison a defendant whose criminal record and current felony convictions qualify for a county jail commitment under section 1170, subdivision (h)." (*Clytus, supra,* at p. 1006.) We disagree, and hold that a state prison sentence imposed and stayed before the effective date of the Realignment Act is not subject to county jail commitment under section 1170, subdivision (h). A court executing such a sentence on or after October 1, 2011, must impose the previously stayed prison term, even if the defendant's current criminal convictions would qualify for county jail under section 1170, subdivision (h).[2]

---

[1]     Undesignated section references are to the Penal Code.

[2]     The Supreme Court's denial of review does not bolster *Clytus.* (See *People v. Davis* (1905) 147 Cal. 346, 350 ["It is proper to add that the denial (of review) in any

2

FACTUAL AND PROCEDURAL BACKGROUND

Defendant Vernon Louis Wilcox pleaded guilty to possession of methamphetamine (Health & Saf. Code, § 11377). The trial court suspended imposition of sentence and placed defendant on five years' formal probation with 120 days in county jail. When defendant later admitted to violating his probation, the trial court imposed a 16-month state prison term, stayed execution of sentence, and reinstated probation. After defendant admitted another probation violation, the trial court terminated probation and ordered execution of the previously imposed 16-month state prison term.

On appeal, defendant contends the trial court erred in failing to sentence him to county jail under the Realignment Act. We disagree and affirm.

DISCUSSION

The facts of defendant's crime are unnecessary to the resolution of his appeal.

Defendant pleaded guilty and was granted probation on July 23, 2008. He admitted his first probation violation on September 27, 2010, and the trial court imposed the 16-month state prison term and stayed execution of sentence. After he admitted the second probation violation on November 22, 2011, the trial court revoked probation and ordered execution of the previously imposed 16-month state prison term.

Defendant's crime is subject to the Realignment Act's county jail provisions. (Health & Saf. Code, § 11377, subd. (a).) Since he is not among the convicted criminals excluded from the county jail provisions (see § 1170, subd. (h)(3)), he would be entitled to the benefit of those provisions if sentenced on or after October 1, 2011. Relying on *Clytus*, he claims he is entitled to be sentenced under the Realignment Act because the

---

case . . . is not to be taken as an expression of any opinion by this court, or as the equivalent thereof, in regard to any matter of law involved in the case and not stated in the opinion of that court, nor, indeed, as an affirmative approval by this court of the propositions of law laid down in such opinion"].)

3

trial court ordered execution of his previously imposed state prison sentence after the Realignment Act's effective date.[3]

*Clytus* addressed the same situation before us, a defendant whose state prison sentence was imposed before but executed after the effective date of the Realignment Act. (*Clytus, supra*, 209 Cal.App.4th at p. 1004.) The *Clytus* court first looked to the language of section 1170, subdivision (h)(6): " '[t]he sentencing changes made by the act that added this subdivision [(h)] shall be applied prospectively to any person sentenced on or after October 1, 2011.' " (*Clytus, supra*, 209 Cal.App.4th at p. 1006.) The *Clytus* court found "[t]he plain meaning of this statute is that any sentence executed on or after October 1, 2011, for a felony that is not prison eligible shall be served in county jail under section 1170, subdivision (h)(2)." (*Clytus, supra*, 209 Cal.App.4th at p. 1006.) Admitting the defendant was sentenced when the court imposed and stayed the state prison term before October 1, 2011, the *Clytus* court concluded the defendant was also sentenced when the trial court executed the sentence after the effective date of the Realignment Act. (*Id*. at p. 1007.)

The Attorney General asserted a contrary result was mandated by *People v. Howard* (1997) 16 Cal.4th 1081 (*Howard*). (*Clytus, supra*, 209 Cal.App.4th at p. 1007.) *Howard* addressed a trial court's authority to alter a previously imposed but suspended state prison sentence when revoking probation. (*Howard, supra,* at p. 1084.) Section 1203.2, subdivision (c) sets forth the court's authority in that situation: "[I]f the judgment has been pronounced and the execution thereof has been suspended, the court may revoke the suspension and order that the judgment shall be in full force and effect." Applying this statute, the Supreme Court held in *Howard*: "On revocation of probation, if the court previously had imposed sentence, the sentencing judge must order that exact

---

[3]    *Clytus* was decided after briefing was concluded. We ordered supplemental briefing to address the *Clytus* decision.

4

sentence into effect [citations], subject to possible recall under section 1170, subdivision (d), after defendant has been committed to custody." (*Howard*, *supra*, at p. 1088, italics omitted.)

The *Clytus* court found *Howard* was inapplicable to construing the Realignment Act. "We find *Howard* does not help us decide the entirely different question whether the trial court had jurisdiction to order that defendant serve his sentence in state prison when it executed sentence after October 1, 2011, for felonies that are no longer prison eligible." (*Clytus, supra*, 209 Cal.App.4th at p. 1008.) Since cases are not authority for propositions not considered (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 320), the *Clytus* court found *Howard* inapplicable. "*Howard* concluded that a trial court may not modify or change a sentence that was imposed and suspended. [Citation.] In contrast, the Realignment Act does not modify or change the sentence for any felony." (*Clytus, supra*, 209 Cal.App.4th at pp. 1008-1009.) The Court of Appeal concluded: "[I]n executing a sentence on and after October 1, 2011, for a felony that is not prison eligible under the Realignment Act, the sentencing court must order that the defendant be committed to county jail." (*Id*. at p. 1009.)

We disagree with the *Clytus* court's treatment of *Howard* as a judicially created rule. Although the Court of Appeal recognized *Howard*'s statutory basis (*Clytus, supra*, 209 Cal.App.4th at p. 1008, fn. 3), the decision never reconciles the Realignment Act with the statute addressed in *Howard*. Even though *Howard* did not address the then nonexistent Realignment Act, it is still necessary to determine the relationship between the Realignment Act and the statute interpreted in *Howard*, section 1203.2, subdivision (c).

The Realignment Act's savings clause is ambiguously written in general terms. The phrase "shall be applied prospectively to any person sentenced on or after October 1, 2011" (§ 1170, subd. (h)(6)) does not specify what constitutes "sentenced," let alone how to address state prison terms imposed and suspended before the Realignment Act's

5

effective date.  Section 1203.2, subdivision (c) is explicit, mandating that when a trial court revokes probation, its previously imposed "judgment shall be in full force and effect."  Under well established rules of statutory construction, specific statutes govern general statutes.  (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 827.)  "[T]o the extent a specific statute is inconsistent with a general statute potentially covering the same subject matter, the specific statute must be read as an exception to the more general statute [citations]."  (*Ibid*.)  Since section 1203.2, subdivision (c) is the more specific statute, it controls, and therefore the Realignment Act cannot be employed to modify a state prison term imposed and suspended before October 1, 2011.

The Court of Appeal in *Clytus* also assumes that the Realignment Act does not modify the punishment for the relevant crimes.  Although the Realignment Act appears not to lessen the term of confinement, it nonetheless reduces punishment for the relevant crimes.  As previously noted, a person sentenced to county jail under the Realignment Act may have a concluding portion of the sentence suspended in lieu of de facto probation, and is not subject to postrelease supervision.  Since a person sentenced to state prison is not entitled to these benefits, the county jail provisions of the Realignment Act effectively reduce the punishment for the myriad of covered crimes.  (*People v. Lynch* (2012) 209 Cal.App.4th 353, 361, fn. 4.)

Applying the Realignment Act to a defendant's suspended state prison term would reduce the sentence and therefore modify the previously imposed term, contravening section 1203.2, subdivision (c).  It would also alter the terms of the plea agreement where the suspended term was part of a stipulated sentence under the plea agreement.  In most cases, including this one, application of the Realignment Act would alter a sentence that was final and binding on the trial court.  (See *People v. Ramirez* (2008) 159 Cal.App.4th 1412, 1421 [sentence imposed but execution suspended is an appealable order, if not challenged on appeal, is final and binding when probation is revoked].)

6

"A 'sentence' is the judgment in a criminal action [citations]; it is the declaration to the defendant of his disposition or punishment once his criminal guilt has been ascertained. [Citation.]" (*People v. Rodriguez* (1963) 222 Cal.App.2d 221, 226.) A case may involve more than one appealable order after guilt -- suspending imposition of sentence with a grant of probation, imposing sentence with stayed execution and probation, and executing the previously stayed sentence are all three separate appealable orders (§§ 1237, 1466, subd. (b)(1); *People v. Robinson* (1954) 43 Cal.2d 143, 145 [suspended imposition of sentence with grant of probation appealable order]) -- yet there is but a single act of sentencing in a criminal case.

*People v. Quinn* (1988) 206 Cal.App.3d 179 (*Quinn*) illustrates this point. In *Quinn*, the defendant was sentenced to state prison on December 3, 1982, but his sentence was recalled pursuant to section 1170, subdivision (d), and he was placed on five years' probation on April 26, 1983. (*Quinn, supra*, at pp. 180-181.) Upon motion of the district attorney, the defendant's probation was revoked on April 22, 1988. (*Id*. at p. 181.) When the defendant was sentenced to state prison on December 3, 1982, the trial court could place defendant on no more than five years' probation. (*Ibid*.) The Court of Appeal held that "a resentencing pursuant to Penal Code section 1170 relates back to the date of the original sentence." (*Quinn, supra*, at p. 182.) Since the grant of probation related back to the date of sentencing, the defendant had completed his five-year term before probation was revoked. (*Ibid.*)

*Quinn* was based on the language of section 1170. The Court of Appeal held that a sentence recalled under section 1170, subdivision (d) related back to the date of the original sentence because "[t]he Legislature used the terms 'recall' and 'resentence' rather than 'correct' or 'modify.' " (*Quinn, supra*, 206 Cal.App.3d at p. 182.) The relevant statute here, section 1203.2, subdivision (c), warrants a similar interpretation. It states in pertinent part: "However, if the judgment has been pronounced and the execution thereof has been suspended, the court may revoke the suspension and order that

7

*the judgment shall be in full force and effect. . . ."* (§ 1203.2, subd. (c), italics added.) In *Howard*, the Supreme Court held that this language prevented a trial court from modifying the sentence when executing a previously imposed and stayed prison sentence. (16 Cal.4th at pp. 1094-1095.) This language also supports holding that execution of a stayed sentence relates back to the original date of sentencing. If execution of sentence did not relate back to the original date of sentencing, then application of the Realignment Act would prevent the trial court from giving full force and effect to the judgment.

Defendant and the Court of Appeal in *Clytus* also relied on educational materials concerning the Realignment Act. (See *Clytus, supra*, 209 Cal.App.4th at p. 1005 [citing Crim. Justice Realignment Resource Center, Frequently Asked Questions <http://www.courts.ca.gov/partners/892.htm> (as of June 26, 2013)].) This source is not a primary or even secondary authority, having no more authority than a law review article or a student note. While these materials can help inform us, they do not compel a particular result or support the *Clytus* court's reasoning.

While the Realignment Act substantially changes sentencing, the Legislature set limits to those changes. Therefore, section 1170, subdivision (h)(6) must be read in conjunction with the entire body of sentencing law, rather than in isolation, as was done in *Clytus*.

Three of the four published Court of Appeal decisions to address *Clytus* have rejected it. (See *People v. Gipson* (2013) 213 Cal.App.4th 1523, 1528–1530 (*Gipson*) [rejecting *Clytus*]; *People v. Mora* (2013) 214 Cal.App.4th 1477, 1481-1482 (*Mora*) [rejecting *Clytus*, agreeing with *Gipson*]; *People v. Kelly* (2013) 215 Cal.App.4th 297, 304 (*Kelly*) [rejecting *Clytus*]; *People v. Scott* (2013) 216 Cal.App.4th 848, ___ [2013 Cal. App. Lexis 407 at pp. 10, 19-21 & fn. 7 (*Scott*) [agreeing with *Clytus* and rejecting *Gipson, Mora*, and *Kelly*].) The decision in *Scott* adds nothing that was not already said in *Clytus*. As in *Clytus*, the *Scott* court found that the text and intent of the Realignment Act led it to conclude that the defendant was sentenced again when the trial court

8

executed the previously suspended sentence. (*Scott, supra,* at pp. __ [2013 Cal. App. Lexis at pp. 11-16].) As in *Clytus*, the *Scott* court found *Howard* did not control. (*Id*. at pp. __ [2013 Cal. App. Lexis at pp. 17-19].) We find *Scott* as unpersuasive as *Clytu*s. Agreeing with *Gipson*, *Mora*, and *Kelly*, we reject *Clytus* and *Scott*.

We likewise reject defendant's contention that sentencing him under the Realignment Act would further the Legislature's purpose of more county jail commitments and fewer prison commitments. Whether the Legislature intended for more felons to serve their terms outside state prison is irrelevant to the question of when the Realignment Act applies. The Legislature intended to limit the impact of the Realignment Act by mandating prospective application to only those felons sentenced on or after October 1, 2011. Our reading of sections 1203.2, subdivision (c) and 1170, subdivision (h)(6) is consistent with the Legislature's policy of controlled change.

Defendant was sentenced when the trial court imposed and stayed execution of the 16-month state prison term on September 27, 2010. While the trial court executed the stayed term after the Realignment Act's effective date, that order related back to the original date of sentencing. The trial court was thus without authority to modify the previously imposed state prison term, and it correctly executed the sentence.

DISPOSITION

The trial court's orders revoking defendant's probation and the suspension of execution of sentence, and committing defendant to state prison are affirmed.

                                          NICHOLSON    , Acting P. J.

We concur:

       HULL         , J.

       DUARTE    , J.

9