Filed 10/22/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B244648 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA 052511) |
| v. | |
| LANIEL WILSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Charles A. Chung, Judge.  Affirmed.

Suzan E. Hier, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Brendan Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

Laniel Wilson appeals his sentence to state prison after the trial court revoked his probation. He argues the trial court should have sent him to county jail because he was effectively "sentenced" after the Criminal Justice Realignment Act of 2011 (the Realignment Act or the Act) became operative on October 1, 2011 when his probation was revoked, even though his sentence was imposed and its execution suspended before that date. A different panel of this Division decided the same issue in *People v. Clytus* (2012) 209 Cal.App.4th 1001 (*Clytus*) (review denied Jan. 16, 2013), finding in this situation the defendant must be sent to county jail. At the time, *Clytus* was the only decision on the issue. Since then, five published decisions have disagreed with *Clytus*. (*People v. Moreno* (2013) 218 Cal.App.4th 846, petn. for review pending, petn. filed Sept. 17, 2013; *People v. Wilcox* (2013) 217 Cal.App.4th 618 (*Wilcox*), review denied Sept. 11, 2013; *People v. Kelly* (2013) 215 Cal.App.4th 297, review denied June 19, 2013; *People v. Mora* (2013) 214 Cal.App.4th 1477, review denied June 19, 2013; *People v. Gipson* (2013) 213 Cal.App.4th 1523 (*Gipson*), review denied June 19, 2013). Two decisions have agreed with *Clytus*, one of which has since been ordered depublished upon grant of the petition for review by our high court. (*People v. Reece* (2013) __ Cal.App.4th __ [2013 WL 5503189] (*Reece*); *People v. Scott* (2013) 216 Cal.App.4th 848, review granted July 24, 2013, S211670.)

In light of the recent cases, the Attorney General urges us to revisit and overrule *Clytus*, while appellant urges us to continue to follow *Clytus*. We need not address these arguments because we agree with the Attorney General's alternative argument not raised in *Clytus* that applying the Realignment Act to send appellant to county jail would impermissibly alter a material term in the parties' plea agreement. (*Clytus, supra*, 209 Cal.App.4th at p. 1009.) We therefore affirm appellant's sentence.

## PROCEDURAL BACKGROUND[1]

Appellant's probation arose from an April 2011 complaint charging him with one count of felony second degree commercial burglary (Pen. Code, § 459)[2] and one count of

---

[1]    The underlying facts are not relevant to the issue on appeal.

misdemeanor petty theft (§ 484, subd. (a)). On April 29 he entered a plea agreement providing that he would plead no contest to the felony commercial burglary count, and in exchange, the court would dismiss the misdemeanor count, impose and suspend execution of a two-year sentence in state prison, and impose a three-year term of probation. No evidence of the parties' plea negotiations appears in the record. Appellant was sentenced on May 20 consistent with the terms of the agreement and was placed on probation with various conditions, including that he serve 28 days in county jail with credit for 28 days served, as well as other conditions not relevant here. The trial court also terminated probation in three misdemeanor probation cases that were pending at the time.

In June 2011, appellant's probation was revoked as a result of allegations he had committed an assault, and in July 2011, the court found appellant had committed the violation and reinstated probation.

A year later on June 4, 2012, the district attorney filed a motion to revoke appellant's probation, alleging a new case had been filed against him. At an August 23, 2012 hearing, appellant admitted he violated probation and pleaded no contest to two new misdemeanor counts. The court executed his previously suspended two-year state prison sentence, imposed a 180-day sentence on the new misdemeanor counts to run concurrently with the two-year state prison term, imposed other terms not relevant here, and dismissed other pending misdemeanor cases.

At this hearing, the trial court initially indicated appellant's sentence would be served in state prison, while both appellant's counsel and the prosecutor understood he would serve his term in county jail. After a discussion held off the record, the trial court imposed the state prison sentence and appellant agreed to it.[3] The trial court's sentencing minute order indicates, "The court notes that the defendant is ineligible for housing in

---

[2] All undesignated statutory citations are to the Penal Code.

[3] Notwithstanding, the Attorney General does not argue waiver on appeal and we do not consider the issue.

3

county jail under Penal Code section 1170(h) due to the nature of the charges and/or his prior criminal history."

Appellant filed a timely notice of appeal, and the trial court granted a certificate of probable cause.[4]

## DISCUSSION

Appellant's sole contention on appeal is that the trial court improperly sentenced him to state prison when it revoked his probation and executed his suspended sentence because, by that time, he was subject to the Realignment Act and should have been sent to county jail. When appellant's sentence was imposed and its execution suspended in May 2011, all felony sentences were served in state prison; however, when his sentence was executed, the Realignment Act prescribed that sentences for certain felonies shall be served in county jail. (§ 1170, subd. (h)(1); *Clytus, supra*, 209 Cal.App.4th at p. 1004.) As *Clytus* explained, "[t]he Realignment Act 'enacted sweeping changes to long-standing sentencing laws,' including replacing prison commitments with county jail commitments for certain felonies and eligible defendants." (*Clytus, supra*, at p. 1004.) It realigns "'low-level felony offenders who do not have prior convictions for serious, violent, or sex offenses to locally run community-based corrections programs.'" (*Ibid.*, quoting § 17.5, subd. (a)(5).) Section 1170, subdivision (h)(6) specifies "[t]he sentencing changes made by the [Realignment Act] that added this subdivision shall be applied prospectively to any person sentenced on or after October 1, 2011."

### 1. *Disqualifying Prior Serious Felonies Under the Realignment Act*

Under the Realignment Act, a defendant with a prior or current serious felony listed in section 1192.7, subdivision (c) must serve his sentence in state prison, not county jail. (§ 1170, subd. (h)(3).) In their briefing on appeal, both appellant and the Attorney General assumed appellant was not disqualified by this provision. They are

---

**4** The certificate did not include the issue appellant now presses on appeal, but once the trial court issues the certificate, an appellant is not limited to the issues identified therein. (*People v. Hoffard* (1995) 10 Cal.4th 1170, 1174.)

correct insofar as appellant's current conviction for second degree commercial burglary in violation of section 459 does not qualify as a serious felony under section 1192.7, subdivision (c). However, appellant's probation report indicates he had two apparent prior felony convictions on June 15, 1996, and April 25, 1997, for "forceful assault with a deadly weapon, not firearm, great bodily injury likely," in violation of section 245, subdivision (a)(1).[5]

A conviction under section 245, subdivision (a)(1) constitutes a serious felony within section 1192.7, subdivision (c) if the defendant personally inflicts great bodily injury (§ 1192.7, subd. (c)(8)), personally uses a dangerous or deadly weapon (§ 1192.7, subd. (c)(23)), or commits the assault with a deadly weapon (§ 1192.7, subd. (c)(31)). (*People v. Banuelos* (2005) 130 Cal.App.4th 601, 604-605 (*Banuelos*).) Merely being convicted of assault by means likely to cause great bodily injury is not a serious felony unless it also involves the use of a deadly weapon or actually results in the personal infliction of great bodily injury. (*Id.* at p. 605; *People v. Delgado* (2008) 43 Cal.4th 1059, 1065 (*Delgado*) ["[A] conviction under the deadly weapon prong of section 245(a)(1) is a serious felony, but a conviction under the [great bodily injury] prong is not."].)

"Where, as here, the mere fact that a prior conviction occurred under a specified statute does not prove the serious felony allegation, otherwise admissible evidence from the entire record of the conviction may be examined to resolve the issue." (*Delgado, supra,* 43 Cal.4th at p. 1065.) The record of appellant's prior convictions is inconclusive on whether they were for assault with a deadly weapon or assault accompanied by personal infliction of great bodily injury (serious felonies) or assault with great bodily injury likely (not a serious felony). In the file for the 1997 conviction, for example, the

---

[5]     At the time of appellant's prior convictions, section 245, subdivision (a)(1) provided, "Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury" would be subject to specified terms of imprisonment. (§ 245, former subd. (a)(1) [eff. to Dec. 31, 1999].)

felony complaint for an arrest warrant alleged one count of assault with a deadly weapon, i.e., a "BEER BOTTLE, SHOD FEET AND FISTS," and by means of force likely to produce great bodily injury. The complaint further alleged the offense to be a serious felony within section 1192.7, subdivision (c), and alleged an enhancement for personal infliction of great bodily injury under section 12022.7, subdivision (a), which also would cause the offense to become a serious felony under section 1192.7, subdivision (c)(8). The case summary and sentencing minute order indicate appellant pleaded no contest to "strike w/ deadly weapon" and "245(A)(1) PC FEL -- ASSAULT W DEADLY WEAPON/INSTR." By not referring to the great bodily injury prong of section 245, subdivision (a)(1), these references could indicate appellant's conviction was for assault with a deadly weapon, a serious felony. (*Delgado, supra*, at pp. 1069-1070 [finding reference to "'PC'" "'245(A)(1)'" and "'Asslt w DWpn'" sufficient to prove assault was committed with deadly weapon to qualify as serious felony].) But the probation report notation of "forceful assault with a deadly weapon, not firearm, great bodily injury likely" could signify a conviction for either assault with a deadly weapon or assault with great bodily injury likely. (See *Banuelos, supra*, 130 Cal.App.4th at p. 606 [finding reference to "'ASSAULT GBI W/DEADLY WEAPON'" in abstract of judgment ambiguous and insufficient to prove use of deadly weapon during commission of offense].) And nothing in the record indicates the factual basis for appellant's plea, such as whether he admitted to personally inflicting great bodily injury or using a deadly weapon. The file also does not contain an abstract of judgment.

This issue was not raised below, so we do not have the benefit of any factual findings by the trial court. The parties also did not address this issue in their briefs on appeal. In supplemental briefing, appellant argued the record was insufficient to find his prior convictions were disqualifying serious felonies and urged the court to reach his argument under *Clytus*. The Attorney General did not address the sufficiency of the record, but simply argued if we follow *Clytus*, we should remand the case for the trial court to determine whether appellant's prior convictions constituted serious felonies.

6

Regardless of our conclusion on the merits of appellant's appeal, we would not remand for further factual findings by the trial court on this issue. Absent contrary evidence, we presume appellant's prior convictions were for the least adjudicated elements of the crimes, which would not qualify them as prior serious felonies. (*Delgado, supra*, 43 Cal.4th at p. 1066; *People v. Rodriguez* (1998) 17 Cal.4th 253, 262 (*Rodriguez*).) The prosecutor bore the burden to prove otherwise in the trial court but did not raise the issue. (*Rodriguez, supra*, at p. 262.) On appeal, the Attorney General has eschewed any argument that the current record is sufficient. Thus, we presume appellant's prior convictions were not serious felonies and do not disqualify him from serving his sentence in county jail under the Realignment Act. We will reach the merits of appellant's primary contention on appeal.

## 2. *The Plea Agreement and the Realignment Act*

Before the October 1, 2011 operative date of the Realignment Act, the trial court sentenced appellant to a two-year term of imprisonment in state prison, but suspended execution of the sentence and imposed probation. After the Realignment Act became operative on October 1, 2011, appellant violated probation and the trial court executed the previously suspended state prison sentence. In an identical factual scenario, *Clytus* held "a trial court executing a suspended sentence as punishment for a probation violation on and after October 1, 2011, has no discretion to send to prison a defendant whose criminal record and current felony convictions qualify for a county jail commitment under section 1170, subdivision (h)." (*Clytus, supra*, 209 Cal.App.4th at p. 1006.) *Clytus* noted, however, the Attorney General did not argue "the prosecutor would not have offered the plea bargain to defendant if the many changes effected by realignment had been anticipated," so *Clytus* refrained from deciding "whether [the parties] might have negotiated their plea agreement differently if they had known defendant would serve his sentence in county jail with supervised release and not parole." (*Id.* at p. 1009.) Unlike in *Clytus*, the Attorney General argues here that ordering appellant to serve his sentence in county jail would alter a material term in the parties' plea agreement. We agree.

"'"When a guilty [or nolo contendere] plea is entered in exchange for specified benefits such as the dismissal of other counts or an agreed maximum punishment, both parties, including the state, must abide by the terms of the agreement.'"'" (*People v. Segura* (2008) 44 Cal.4th 921, 930-931, original brackets.) "Thereafter, material terms of the agreement cannot be modified without the parties' consent." (*People v. Martin* (2010) 51 Cal.4th 75, 80.) "A negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles. [Citations.] 'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. [Citation.]'" (*People v. Shelton* (2006) 37 Cal.4th 759, 767.)

As relevant to this case, "'"all applicable laws in existence when an agreement is made, which laws the parties are presumed to know and to have had in mind, necessarily enter into the contract and form a part of it, without any stipulation to that effect, as if they were expressly referred to and incorporated,"'" and "laws enacted subsequent to the execution of an agreement are not ordinarily deemed to become part of the agreement unless its language clearly indicates this to have been the intention of the parties." (*Swenson v. File* (1970) 3 Cal.3d 389, 393 (*Swenson*).) Thus, "to hold that subsequent changes in the law which impose greater burdens or responsibilities upon the parties become part of that agreement would result in modifying it without their consent." (*Id.* at p. 394.)

The Supreme Court recently addressed this rule from *Swenson* in the context of a plea agreement. (*Doe v. Harris* (2013) 57 Cal.4th 64 (*Doe*).) At issue was whether the defendant's plea agreement was violated by applying a retroactive amendment to California's Sex Offender Registration Act, section 290 et seq. (*Doe, supra*, at p. 65.) Responding to a question certified by the United States Court of Appeals for the Ninth Circuit, the court drew a distinction between *Swenson*,[6] which involved a change in law

---

[6] The court assumed without deciding that the rule announced in *Swenson*, a civil case involving a commercial contract, applied to plea agreements. (*Doe, supra*, 57 Cal.4th at p. 69.)

not intended to apply retroactively, and *People v. Gipson* (2004) 117 Cal.App.4th 1065 (*Gipson*), in which the court applied a retroactive change in recidivism sentencing notwithstanding the parties' plea agreement under prior law. (*Doe, supra*, at pp. 69-70.) In contrast to *Swenson*, the court in *Gipson* applied the rule, "'When persons enter into a contract or transaction creating a relationship infused with a substantial public interest, subject to plenary control by the state, such contract or transaction is deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy . . . .'" (*Doe, supra*, at p. 70, quoting *In re Marriage of Walton* (1972) 28 Cal.App.3d 108, 112.)

The court in *Doe* explained these cases recognize "that the Legislature, for the public good and in furtherance of public policy, and subject to the limitations imposed by the federal and state Constitutions, has the authority to modify or invalidate the terms of an agreement. Our explanation in *Swenson* that, as a general rule, contracts incorporate existing but not subsequent law, does not mean that the Legislature lacks authority to alter the terms of existing contracts through retroactive legislation. Nor should it be interpreted to mean that the parties, although deemed to have existing law in mind when executing their agreement, must further be deemed to be unaware their contractual obligations may be affected by later legislation made expressly retroactive to them, or that they are implicitly agreeing to avoid the effect of valid, retroactive legislation. *Gipson* explains that the parties to a plea agreement -- an agreement unquestionably infused with substantial public interest and subject to the plenary control of the state -- are deemed to know and understand that the state, again subject to the limitations imposed by the federal and state Constitutions, may enact laws that will affect the consequences attending the conviction entered upon the plea." (*Doe, supra*, 57 Cal.4th at p. 70.) The court applied the rule from *Gipson*, not *Swenson*, because the amendments to the Sex Offender Registration Act were expressly made retroactive by the Legislature. (*Ibid.*)

The court in *Doe* also reasoned, "it is not impossible the parties to a particular plea bargain might affirmatively agree or implicitly understand the consequences of a plea will remain fixed despite amendments to the relevant law," although this inquiry "presents factual issues that generally require an analysis of the representations made and other circumstances specific to the individual case." (*Doe, supra*, 57 Cal.4th at p. 71.) Generally, "prosecutorial and judicial silence on the possibility the Legislature might amend a statutory consequence of a conviction should not ordinarily be interpreted to be an implied promise that the defendant will not be subject to the amended law." (*Ibid.*)

Unlike in *Doe* and *Gipson*, the Legislature expressly provided the Realignment Act would apply only prospectively to "any person sentenced on or after October 1, 2011." By making the Realignment Act operate prospectively only, the Legislature did not intend to affect any existing plea agreements. The rule in *Swenson* therefore applies and the law as it existed prior to the Realignment Act governs the plea agreement unless the language and surrounding circumstances of the agreement clearly indicate otherwise. They do not. Rather than remaining silent on where appellant would serve his suspended jail term, the plea agreement expressly contemplated appellant would serve the term in state prison. Although the record does not reflect whether the parties discussed the Realignment Act as part of the plea negotiations in April and May 2011, the Realignment Act was enacted on April 4, 2011, and we presume the parties were aware of it at the time. (Stats. 2011, ch. 15, § 450.) While the changes to section 1170, subdivision (h) did not become operative until October 1, 2011,[7] having negotiated the agreement under the shadow of the Realignment Act, the parties must have intended the state prison aspect of their agreement to be an important part of their bargain or they would not have included it.

---

[7]     The original version of the Realignment Act enacted in April 2011 provided that the sentencing changes would apply prospectively to any person sentenced on or after July 1, 2011, but that date was later amended to October 1, 2011. (Stats. 2011, ch. 39, § 27.)

Appellant also correctly notes a county jail sentence under the Realignment Act is in many ways like a pre-Act state prison sentence. "[T]he 2011 Realignment Act did not change the existing rules about felony probation eligibility, the length of any felony sentence, or how the sentence is to be calculated under sections 1170 and 1170.1. Instead, the Realignment Act changed only the place where certain less violent felons serve their sentences." (*People v. Prescott* (2013) 213 Cal.App.4th 1473, 1478, fn. 2 (*Prescott*).) But there are important differences that could impact plea negotiations. A defendant under the Realignment Act is no longer subject to parole or postincarceration state supervision, while he or she would have been upon release from state prison. (*Wilcox, supra*, 217 Cal.App.4th at p. 621; *People v. Cruz* (2012) 207 Cal.App.4th 664, 671-672 (*Cruz*).) And the trial court has discretion to suspend execution of a portion of a defendant's county jail term and place the defendant on mandatory supervision, which could significantly reduce the period of actual custody (often called "split" or "blended" sentences). (§ 1170, subd. (h)(5)(B); *Wilcox, supra*, at p. 621; *Prescott, supra*, at p. 1478, fn. 2.)

In light of these differences, the parties' bargain likely would have been different if, at the time the trial court imposed and suspended execution of appellant's sentence and imposed probation, appellant would have been eligible under the Realignment Act to serve his suspended sentence in county jail if he violated probation at some future time. The prosecutor may not have agreed to probation at all for appellant's most recent offenses if the only sentence hanging over appellant's head was a term in county jail without parole, part of which could be suspended in favor of mandatory supervision.[8] (*Cruz, supra*, at p. 680, fn. 15 [noting "a term of imprisonment, followed by a mandatory period of parole, is likely to have been an important consideration in many, if not most, felony plea agreements"].) Indeed, the probation report recommended probation be

---

[8] It may be possible the parties could agree a defendant would not serve a split or blended sentence under the Realignment Act as part of a plea agreement. We need not decide that question. But we note sending appellant to county jail now would deprive the parties of the opportunity to negotiate a term like that as part of a plea bargain.

11

denied and appellant be sentenced to state prison because appellant had a significant criminal history and he was on several grants of probation at the time he committed the offenses that led to the plea agreement. Given appellant's background and the fact that the Realignment Act was to become operative shortly, the suspended state prison sentence may have assured the prosecutor that appellant would comply with the terms of his probation, while a county jail sentence may not have. By the same token, if the prosecutor was unwilling to agree to probation if the suspended sentence would have been served in county jail, appellant may have been deprived of the benefit of probation, i.e., the opportunity to avoid actual custody. It is only now -- when his probation has been revoked -- that he is seeking to benefit from the opportunity both to serve probation and to serve an arguably more favorable county jail sentence. Applying the Realignment Act to appellant's sentence now would therefore deprive the parties of an expressly agreed upon benefit of their bargain. (See *Wilcox, supra*, at p. 624 [Applying the Realignment Act in this circumstance "would also alter the terms of the plea agreement where the suspended term was part of a stipulated sentence under the plea agreement."].)[9]

---

[9] In *Reece*, the court affirmed the defendant's county jail sentence and rejected the Attorney General's request to remand the matter so the prosecution could withdraw the plea agreement on the ground the defendant's county jail sentence deprived the prosecution of the benefit of the bargain, an integral part of that agreement. (*Reece, supra*, __ Cal.App.4th at p. __ [2013 WL 5503189, at pp. *6-*7].) It reaching this conclusion, it distinguished *People v. Collins* (1978) 21 Cal.3d 208 and *People v. Bean* (1989) 213 Cal.App.3d 639. In *Collins*, the court invalidated the parties' plea agreement because the single count to which the defendant pleaded guilty was no longer a crime. Instead of permitting the defendant to be set free, the court remanded the matter to allow the prosecution to revive dismissed counts because "the defendant's vulnerability to a term of punishment" was integral to the agreement. (*Collins, supra*, at p. 215.) In *Bean*, the court found the crime to which the defendant pleaded guilty was nonexistent, but refused to alter the plea agreement to allow the defendant to plead guilty to a misdemeanor. Because "the intent of the parties was to expose defendant to the possibility of a state prison sentence," the court remanded the matter so the prosecution could reinstate dismissed charges. (*Bean, supra*, at pp. 645-646.) We generally agree these cases addressed different factual scenarios, but as already explained, we disagree they lead to the conclusion reached in *Reece* that sending the appellant to county jail now would not alter a material term to the parties' plea agreement.

12

## DISPOSITION

We need not address the continuing vitality of *Clytus* because, in this case, sending appellant to county jail under the Realignment Act would alter a material term in the parties' plea agreement that he serve his executed sentence in state prison, an issue expressly left open in *Clytus*.  The trial court therefore properly sentenced appellant to state prison and we affirm appellant's sentence.


FLIER, J.

I CONCUR:


GRIMES, J.


13

**People v. Wilson**

**B244648**

**BIGELOW, P. J., Concurring:**

I concur.  I write separately to note, with regard to the regular references to *People v. Clytus* (2012) 209 Cal.App.4th 1001, 1007 (*Clytus*), I was not on the panel of this division that decided that case.  Despite my respect for my colleagues, I do not agree with the holding in *Clytus* for the reasons set forth in *People v. Gipson* (2013) 213 Cal.App.4th 1523.


BIGELOW, P. J.