Filed 2/22/21  P. v. Orozco CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br>v.<br><br>SELSO ELYSAO OROZCO,<br><br>          Defendant and Appellant. | A158507<br><br>(Sonoma County<br>Super. Ct. No. SCR721077-1) |

After defendant Selso Elysao Orozco entered an open plea of no contest to several charges and admitted multiple firearm enhancements, the trial court sentenced him to 23 years in state prison.  On appeal, defendant contends that because his attorney was not present at his postconviction, presentence interview, his constitutional rights against self-incrimination and to counsel were violated.  Alternatively, he maintains he received ineffective assistance of counsel when his attorney failed to attend the interview.  We affirm.

1

Defendant was charged in an 11-count amended complaint[2] based on events occurring over a three-day period in October 2018. Prior to the preliminary hearing, defendant entered an open plea of no contest to the charges—leaving sentencing to the discretion of the court. He also admitted various firearm allegations and admitted he had suffered a prior prison sentence and conviction. The court then set the matter for sentencing, ordered a presentence report, and informed counsel of the time period for filing sentencing memoranda.

In defendant's interview with probation, defendant and the probation officer "reviewed the crime reports," and defendant made several statements regarding the crimes, which were summarized in the probation officer's report and submitted to the court for consideration at sentencing. Among other things, defendant stated "he did not recall much, if any, of the circumstances" of the crimes because he was " 'blacking out a lot at that time.' " He acknowledged his drug addiction and stated "these crimes were

---

[1] We relate only those facts relevant to the issues on appeal. Because defendant pled no contest before the preliminary hearing, any relevant facts related to the convictions are taken from the presentence probation report.

[2] Defendant was charged with one count of felony first degree automated teller machine robbery (Pen. Code, § 211—count 1), five counts of felony second degree robbery (*id.,* § 211—counts 2-4, 7-8), two counts of felony child endangerment (*id.*, § 273a, subd. (a)—count 5-6), one count of felony possession of a firearm by a felon (*id.*, § 29800, subd. (a)(1)—count 9), one count of felony possession of ammunition (*id.*, § 30305, subd. (a)(1)—count 10), and one count of misdemeanor identity theft (*id.*, § 530.5, subd. (a)— count 11). It was further alleged as to counts 1 through 4, 7, and 8 that defendant personally used a firearm pursuant to Penal Code sections 12022.53, subdivision (b) and 1203.06, subdivision (a)(1) and as to counts 5 and 6 pursuant to Penal Code section 12022.5, subdivision (a). The complaint also alleged defendant had suffered a prior conviction and prison sentence.

committed" due to his addiction and the stolen "money and property were 'probably used for [his] addiction.' " He denied putting any "forethought" into the crimes, stating " 'If I would have planned it, I think I would have gotten more out of it. I just ended up hurting people I guess. I did not really get anything out of it.' " Although defendant expressed remorse for his actions, he also minimized his actions, stating " 'I don't want to make it sound like I don't care about what I did, because I do . . . I don't remember getting too much out of it, that's the problem. . . . All I did was just hurt a family. . . . I don't know if I took a lot of money.' " When questioned about this statement, defendant compared his crimes to that of a bank robbery, noting " 'If I was going to rob a bank . . . that would be worth going to jail.' "

At the sentencing hearing, the trial court stated on the record it had reviewed the defendant's sentencing memorandum and statement in mitigation, the prosecutor's statement in aggravation, and the presentence report. The court also heard from counsel, as well as defendant.

When defense counsel spoke, she stated, "I would like the Court to know that the probation report and the interview by my client, by probation with my client, he does say some things that are concerning. [¶] At the time that he was interviewed, I'd asked to be present during his interview. It didn't make it to the minutes so they interviewed him without my presence. [¶] . . . [¶] And I think his minimizing in the probation report is very clear, he's minimizing based on his lack of counseling with me. . . ." However, defense counsel made no objection or further statement about her absence from the interview and, instead, moved forward with her statements regarding mitigation.

In passing sentence, the trial court took into account defendant's "lack of criminal history over the last 20 years," "that no one was physically hurt,"

that defendant "accepted responsibility at an early stage," and that defendant felt "remorse for what has occurred in this case," as well as factors in aggravation such as the vulnerability of and impact on the victims.

**DISCUSSION**

Defendant contends his Fifth Amendment privilege against self-incrimination and Sixth Amendment right to counsel were violated because his attorney was not present at the presentence interview.

With respect to the Sixth Amendment, defendant asserts "a presentence interview is a critical stage of trial" and therefore he "had a constitutional right to have counsel present."

The court in *Brown v. Superior Court* (2002) 101 Cal.App.4th 313 (*Brown*), addressed this issue. There, the defendant pled guilty to a charge of stalking, and the court sentenced him to three years' probation subject to a variety of terms and conditions. (*Id.* at p. 317.) The conditions were later augmented, over defense counsel's objection, to include polygraph testing for purposes of treatment. (*Id.* at pp. 318–319.) The defendant sought a writ of mandate directing the trial court to vacate its order on the ground the new polygraph condition violated his Fifth and Sixth Amendment rights. (*Id.* at p. 317.) The Court of Appeal held the defendant did not have a Sixth Amendment right to counsel "in a probation interview or therapy session." (*Id.* at p. 320, citing *Minnesota v. Murphy* (1984) 465 U.S. 420, 424, fn. 3, and cases cited therein.)

Defendant claims *Brown* is distinguishable, asserting that in his case "[n]o probation was involved, no lie detector test was ordered, and the entirety of Appellant's excessive sentence was based on the presentence report."

4

To begin with, "the entirety" of defendant's sentence was not "based on" the presentence report. The court stated it not only had read the presentence report, but also had received and reviewed defendant's statement in mitigation, as well the prosecutor's statement in aggravation. The court also observed, in sentencing defendant, that over the course of "basically it's a 48-hour period of time," defendant did "these horrible things," to eight people, including two children, and that showed "a level to me of someone who is not entitled to probation and is deserving of a lengthy prison term in the case." Furthermore, *Brown* did not indicate that its holding was confined to the facts before it and that in other contexts, a post-conviction presentencing interview triggers Fifth and Sixth Amendment rights. (See *Brown, supra,* 101 Cal.App.4th at p. 320.)

Alternatively, defendant maintains, "[t]o the extent that [his] proposition is contrary to the Court's decision in *Brown*[,] . . . it is submitted that there is a good faith basis for changing the law," citing to a 1991 Ninth Circuit case and a 2012 law review article.

In *United States v. Herrera-Figueroa* (1991) 918 F.2d 1430 (*Herrera-Figueroa*), the Ninth Circuit addressed "whether a federal probation officer may refuse to honor a defendant's request that his attorney be present during the presentence interview." (*Id.* at p. 1431.) There, the defendant, when contacted by probation to schedule the interview, stated "he wished to have his counsel present at the interview." (*Id.* at p. 1432.) The probation department, however, "refused to interview him in the presence of counsel and advised him that his attorney would not be permitted to attend." (*Ibid.*) The defendant then refused to be interviewed and instead submitted a letter to the district court. (*Ibid.*) The district court noted the defendant's unwillingness to be interviewed without counsel and declined to give him a

5

"two-point reduction for acceptance of responsibility" for the crime, stating he "chose not to be interviewed 'at his own risk.' " (*Ibid.*) The Ninth Circuit reversed, concluding "exclusion of counsel from presentence interviews serves no rational purpose." (*Id.* at p. 1431.) And exercising its "supervisory power over the orderly administration of justice," it held that when a federal defendant requests that counsel accompany him to a presentence interview, "the probation officer must honor that request." (*Ibid.*)

Here, defense counsel was not denied permission to attend the interview. Rather, counsel's request to attend "didn't make it into the minutes," and there was apparently no follow-up on counsel's part. Nor did defendant request that his counsel be present or refuse to participate in the interview in the absence of his attorney. Indeed, in *Baumann v. United States* (1982) 692 F.2d 565, 578, the Ninth Circuit held "a routine presentence interview of an individual convicted of a noncapital federal offense is not . . . a critical stage of the proceeding in which counsel's presence, or advice, is necessary to protect the defendant's right to a fair trial."

Defendant also cites to a Denver University Law Review comment, contending, in the federal context, that a presentence interview is a critical stage under the Sixth Amendment. (Comment: *United States v. Washington: Why Counsel's Advice and Presence at Presentence Interviews Is Necessary to Prevent Sentencing Suicide* (2012) 89 Denv. U.L. Rev. 477, 478.) While interesting, a law review article is not persuasive authority. (See *People v. Wilcox* (2013) 217 Cal.App.4th 618, 626 ["[w]hile these materials can help inform us, they do not compel a particular result"].)

In sum, we are not persuaded we should depart from the well-established law that post-conviction, presentencing interviews do not

implicate the Sixth Amendment right to counsel. Indeed, in the nearly two decades since *Brown* was decided, no court has ever questioned its holding in this regard.

Nor did the post-conviction, presentence probation interview compromise defendant's Fifth Amendment right against self-incrimination. As the court in *Brown* explained, there was no Fifth Amendment violation because the privilege "is not self-executing; rather it must be claimed." (*Brown, supra*, 101 Cal.App.4th at p. 320.) "[U]nless [the defendant] specially invokes the privilege, shows he faces a realistic threat of self-incrimination and nevertheless is made to answer the question or questions, no violation of his privilege against self-incrimination is suffered." (*Ibid.*) Here, defendant did not clear even the first hurdle, let, alone, make a showing as to the additional two requirements.

Finally, since there was no violation of defendant's Fifth or Sixth Amendment rights as a result of counsel's failure to attend the presentence interview, there is no merit to defendant's alternative contention that he received ineffective assistance of counsel. (See *People v. Henderson* (2020) 46 Cal.App.5th 533, 549 [" ' "to establish a claim of ineffective assistance of counsel, defendant bears the burden of demonstrating, first, that counsel's performance was deficient because it 'fell below an objective standard of reasonableness [¶] . . . under prevailing professional norms' " ' "].]

And even if failure to attend the presentencing interview did constitute ineffective assistance, defendant has failed to show prejudice.

Defendant asserts otherwise, pointing to the prosecutor's statements during the sentencing hearing and asserting the prosecutor "pounced on Appellant's presentence interview statements." Specifically, defendant points to the prosecutor's statement that, "I've reviewed [defendant's] comments in

his probation interview. I find them to be offensive. I find them to be self-serving. I find his memory to be selective and very convenient," and "I find everything that he told the probation department to be ridiculous. He says— he minimizes what he did by saying all I did was harm a family, it's not like I got all this money from a bank." Defendant also points to the probation officer's evaluation in which the officer stated, "This façade of remorse, however, is significantly hollowed by his subsequent statements to probation, which he commented that he did not recall 'getting too much out of it,' and most notably, despite his subsequent attempt to explain this comment, his statement that 'all [he] did was just hurt a family.' "

However, as we have recited, the trial court did not rely solely on the probation report. It also received memoranda from the prosecutor and defense counsel and heard from counsel and from defendant. The trial court considered multiple factors in mitigation, including that no one was physically hurt, that defendant accepted responsibility at an early stage and that defendant felt remorse, stating "I have no doubt there was a drug issue fueling this, . . . I have no doubt that you feel remorse" and "I do believe there are some redemptive qualities about you and it's primarily from reading the statement in mitigation in this case and the fact that your family tried to intervene before all of this happened. . . . So those are things that are going in your favor." But the court also weighed significant factors in aggravation—that "over this two day[,] basically it's a 48-hour period of time," defendant did "these horrible things," to eight people, including two children, exhibiting "a level to me of someone who is not entitled to probation and is deserving of a lengthy prison term in the case." In short, the court did not give particular weight to either the prosecutor's reference to the probation report, or the probation officer's take on defendant's statements.

8

(See *People v. Warner* (1978) 20 Cal.3d 678, 683, superseded by statute on another ground as stated in *People v. Douglas* (1999) 20 Cal.4th 85, 92, fn. 6 [probation reports are provided to assist, and the recommendations of the probation officer should be considered; however, it is the trial court, not the probation officer, who must make sentencing decisions].)  Indeed, the trial court imposed a less severe sentence than recommended by the probation department or urged by the prosecution.[3]

### DISPOSITION

The judgment is affirmed.

---

[3] The probation department recommended a prison sentence of 51 years 8 months; the prosecutor urged a prison sentence of 33 years 8 months.

_____

Banke, J.

We concur:


_____

Humes, P.J.


_____

Margulies, J.


A158507, People v. Orozco