Filed 9/17/20  P. v. Eisenhut CA5
Opinion Following Rehearing

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARK EDWARD EISENHUT,<br><br>    Defendant and Appellant. | F076732<br><br>(Super. Ct. No. CRF46451)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tuolumne County.  James A. Boscoe, Judge.

Michael L. Pinkerton, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Paul E. O'Connor, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Mark Edward Eisenhut stands convicted, following a jury trial, of simple battery.  On appeal, he contends that the trial court erred (1) by admitting video-recorded evidence of witness testimony despite the prosecutor's inadequate showing of diligence in attempting to secure the witness's attendance, and (2) by failing to apportion fault and restitution based on the victim's comparative fault.

After granting rehearing and receiving supplemental briefing by the parties, we again dismiss defendant's appeal as to his first claim of error because we lack jurisdiction to consider it, vacate the victim restitution order, and remand for the trial court to determine whether a compelling and extraordinary reason exists to impose less than full victim restitution.  In all other respects, we affirm.

## PROCEDURAL SUMMARY

On February 13, 2015, the Tuolumne County District Attorney charged defendant with battery causing serious bodily injury.  (Pen. Code, § 243, subd. (d).)[1]

On September 7, 2017, the jury convicted defendant of the lesser included offense of simple battery, a misdemeanor.  (§ 242.)

On September 18, 2017, the prosecutor filed a motion seeking restitution in the amount of $46,211 on behalf of the victim, Trevor Eisenhut.[2]  In support of the motion, the prosecutor submitted evidence of the medical expenses incurred by Trevor.

On October 3, 2017, the trial court suspended imposition of sentence and granted defendant probation with various conditions, including victim restitution, the amount of which would be determined at a later hearing.

---

[1]     All further statutory references are to the Penal Code unless otherwise stated.

[2]     As defendant and the victim share the same last name, we refer to the victim by his first name.  No disrespect is intended.

2

On November 28, 2017, the court ordered $44,711 in victim restitution—the entire amount sought by the prosecutor except for $1,500 of anesthesia costs that the trial court found to be inadequately proved.

On December 11, 2017, defendant filed a notice of appeal.

On July 15, 2020, we filed an unpublished opinion. We dismissed defendant's appeal as to his first claim of error because we lack jurisdiction to consider it, vacated the victim restitution order, and remanded for the trial court to determine whether a compelling and extraordinary reason exists to impose less than full victim restitution. In all other respects, we affirmed.

On July 30, 2020, the People filed a petition for rehearing, arguing that rehearing was required because the parties did not brief the question of whether compelling and extraordinary reasons existed to impose less than full restitution.

On July 31, 2020, we ordered defendant to file an answer to the petition.

On August 10, 2020, we granted the petition for rehearing, vacated the July 2020 opinion, and requested that the parties submit supplemental briefing to address whether the matter should be remanded to permit the trial court to exercise its discretion to consider whether any compelling and extraordinary reasons justify an award of less than full victim restitution, pursuant to the 2015 version of section 1202.4, subdivision (f).

## FACTUAL SUMMARY

### I.      Prosecutor's Case

On February 6, 2015, Trevor went to his grandmother's property with his two-year-old daughter and his girlfriend. Defendant, who is Trevor's uncle, lived on the property. Trevor's girlfriend testified that she and Trevor went to the property to pick up clothing for Trevor's daughter. While at the property, Trevor decided to take his daughter for a ride on his dirt bike. Trevor rode the dirt bike with his daughter for

3

approximately five to 10 minutes at no more than 10 miles per hour. After Trevor's daughter decided she no longer wanted to ride on the dirt bike, he dropped her off with his girlfriend. Trevor continued riding his dirt bike. Trevor and his girlfriend both testified that when Trevor rode his dirt bike without his daughter, he rode much faster.

Trevor testified that while he was riding his dirt bike without his daughter, defendant exited a trailer on the property and approached him. Defendant told Trevor to park the dirt bike but Trevor ignored him. Trevor revved the throttle and continued past defendant. Trevor went to the end of the road and turned around. As he came back to the property, defendant stood in the middle of the road to block him. Trevor went in a "big loop" around defendant, revved his throttle at him again, and continued down the road, back to the property. Trevor then went to his daughter and asked if she wanted to go for another ride. His daughter declined and he looped around the property to park the dirt bike. Trevor's girlfriend testified that Trevor rode the dirt bike for only about five or 10 minutes by himself.

In going to park the dirt bike, Trevor passed by defendant's trailer. Trevor testified that at no point did he ride the dirt bike at defendant or try to hit him. Trevor passed defendant's trailer on his way to the carport, going roughly five miles per hour. As Trevor passed, defendant came out from behind the trailer where he was hiding and hit Trevor either once or twice with his bare hands. At least one of the hits was to Trevor's helmet. Before defendant hit Trevor on the helmet, he was in control of the dirt bike. But after defendant hit Trevor on the helmet, he swerved to the right, nearly hitting the carport, and then swerved to the left to try to correct. As Trevor swerved and then corrected, the front tire of the dirt bike lost traction and slid. Trevor and the dirt bike fell to the ground seconds after defendant hit him. Trevor's leg was pinned under the dirt bike in the fall, breaking his ankle and tearing a ligament in his knee.

4

Trevor told defendant that defendant had broken Trevor's leg. Defendant stood over Trevor, and said, "That's what you get motherfucker." Trevor's grandmother then took Trevor to the hospital.

## II.     Defense Evidence

Defendant testified that in February of 2015, he lived on his mother's property in Tuolumne County. On February 6, 2015, he was in one of the two workshops on the property when he heard Trevor start his dirt bike. Defendant exited the workshop and saw that Trevor was riding in a safe manner with his daughter, so he went back to the workshop.

Defendant next heard a loud noise from outside that "sounded like I was at the racetrack." Defendant testified, "I went outside. I saw him. He's up going over a little bank and looking back over his shoulder and being cool, and I stopped him. I told him to park it." Defendant's neighbor also heard the loud noises caused by the dirt bike and checked to see what was going on. The neighbor testified that Trevor was "popping wheelies," riding "reckless[ly]," and doing "burnouts." The neighbor decided to tell Trevor to stop. She went to the end of her driveway where she had seen Trevor turn around in a previous lap. She waved her arms and shouted at him to stop. Trevor came within seven feet of the neighbor on his dirt bike but did not acknowledge her and did not stop.

Defendant testified that soon after Trevor started riding without his daughter, defendant stopped him, stood in front of the dirt bike, and told him to park it. In response, Trevor was "aggressive and defiant." He looked at defendant, revved up the dirt bike and "popped the clutch," forcing defendant to move out of the way. Trevor then raced by defendant again, looking over his shoulder at defendant as he raced down the street, doing a "wheelie[]."

5

Defendant attempted to stop Trevor a second time. This time, defendant stopped Trevor on the road, put his hand on the handlebar, and told Trevor again to park the dirt bike. Trevor responded in the same manner, revving his engine and being aggressive. He then sped off, hitting defendant in the ribs with the handlebar.

Defendant testified that he did not think he would be able to convince Trevor to stop. He decided to go to the house to have his mother, Trevor's grandmother, stop Trevor from riding. As defendant was walking back to the house, he saw Trevor riding through the yard toward him standing on the dirt bike's pegs. When Trevor passed through a roughly four-foot-wide narrowing of the path, he "hit[] the throttle," pulling the front wheel off of the ground about a foot. Trevor came within two or three feet of defendant as he passed at high speed, still standing on the dirt bike's pegs. Defendant did not touch or hit Trevor as he passed. Trevor turned his head to look at defendant as he passed. When Trevor looked back, with his front wheel off of the ground, he was headed for a car trailer. Trevor locked the rear brake. When the front tire touched down, it was at an angle. The dirt bike "nosed in" and launched Trevor off the side of the dirt bike. Defendant described the event as a "highside" crash.

Defendant testified about two photographic exhibits. One showed the skid mark caused when Trevor locked the brake. The other showed a hole in the ground farther down Trevor's path where the dirt bike's peg sank into the ground when it fell. Defendant explained that when he picked up the dirt bike, the peg was still stuck in the ground. Trevor's ankle and knee were not injured by being pinned under the dirt bike. Instead, they were injured when Trevor was launched off of the dirt bike. The dirt bike never hit Trevor.

Defendant initially did not say anything to Trevor because defendant was laughing too hard. Trevor eventually claimed that defendant made him crash. Defendant denied having made Trevor crash.

6

# DISCUSSION

## I.  Jurisdiction

The People argue that we are without jurisdiction over the portion of defendant's appeal that challenges the admission of evidence at trial because it attacks his judgment of conviction for which no timely notice of appeal was filed.  Defendant has given no response.  We agree that we are without jurisdiction over defendant's first claim of error and thus it must be dismissed.

"[A] notice of appeal must be filed within 60 days after the rendition of the judgment or the making of the order being appealed."  (Cal. Rules of Court, rule 8.406(a)(1).)[3]  "[T]he filing of a timely notice of appeal is a jurisdictional prerequisite.  'Unless the notice is actually or constructively filed within the appropriate filing period, an appellate court is without jurisdiction to determine the merits of the appeal and must dismiss the appeal.' "  (*Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106, 113.)

A challenge to the admission of evidence at trial is a challenge to the judgment of conviction.  (See, e.g., *People v. Lessie* (2010) 47 Cal.4th 1152, 1157 [the defendant challenged his conviction when he challenged the admissibility of evidence of his confessions].)  Thus, to appeal the admission of evidence at trial, a defendant must file a notice of appeal within 60 days after the judgment has been rendered.  (Rule 8.406(a)(1).)  "In a criminal case, judgment is rendered when the trial court orally pronounces sentence."  (*People v. Karaman* (1992) 4 Cal.4th 335, 344, fn. 9; *People v. Wilcox* (2013) 217 Cal.App.4th 618, 625 [" 'A "sentence" is the judgment in a criminal action [citations]; it is the declaration to the defendant of his disposition or punishment once his criminal guilt has been ascertained.  [Citation.]' "].)  However, if no sentence has been imposed because imposition of sentence was suspended before probation was granted, the

---

[3]  All references to rules are to the California Rules of Court.

"order granting probation … shall be deemed to be a final judgment" from which the defendant may appeal.[4] (§ 1237, subd. (a); see *People v. Chavez* (2018) 4 Cal.5th 771, 786 [under § 1237, an order granting probation is deemed a final judgment for the purpose of taking an appeal, but not for other purposes].)

Here, the trial court suspended imposition of sentence and granted probation on October 3, 2017. Defendant was required to file a notice of appeal by December 4, 2017, in order to appeal the admission of evidence at trial.[5] But he did not file a notice of appeal until December 11, 2017, purporting to appeal from an order or judgment rendered on November 28, 2017. Nothing in the record suggests there was any cause to extend time for filing a notice of appeal (see, e.g., rule 8.108(b)–(f)). Thus, the portion of defendant's appeal challenging admission of evidence must be dismissed.

However, defendant's challenge to the postjudgment restitution order is cognizable on appeal. The restitution order was separately appealable from the order granting probation. (§ 1237, subds. (a) & (b) [an appeal can be taken from "an order granting probation" and "any order made after judgment"]; see *People v. Ford* (2015) 61 Cal.4th 282, 286 ["order of restitution was appealable, as it was made after judgment and affected defendant's substantial rights," citing §§ 1202.4, subd. (f), 1237, subd. (b)]; *People v. Denham* (2014) 222 Cal.App.4th 1210, 1213–1214 [postjudgment victim

---

**4**      A trial court may grant probation by either suspending imposition of the sentence, or by imposing the sentence and suspending its execution. (*People v. Segura* (2008) 44 Cal.4th 921, 932.) In the first situation, when the trial court initially suspends imposition of sentence and grants probation, "no judgment is then pending against the probationer, who is subject only to the terms and conditions of the probation." (*People v. Howard* (1997) 16 Cal.4th 1081, 1087.) Section 1237 provides a way for defendants in this position to appeal.

**5**      Sixty days after October 3, 2017, was Saturday, December 2, 2017. When the last day to file a notice of appeal under the 60-day rule falls on a weekend or holiday, the period to file a notice is extended to and includes the next day that is not a holiday. (Code Civ. Proc., § 12a, subd. (a).)

restitution order became "an order after judgment that was appealable separately from the judgment itself"].) The December 11, 2017 notice of appeal was timely as to the November 28, 2017 restitution order.

## II.    Restitution

Defendant contends the trial court erred when it ordered victim restitution without applying comparative fault principles to apportion fault and restitution between defendant and Trevor. Defendant argues that his acquittal of the greater offense of battery causing serious bodily injury and his conviction of the lesser included offense of simple battery were the jury's repudiation of a causal link between the battery and Trevor's injury—and without that causal link, the jury must have concluded defendant's conduct was merely *negligent*. He explains that the lack of causation "leave[s] [defendant's] negligence in interfering with Trevor's operation of the dirt bike as a substantial factor in causing the injuries." He asserts that if his conduct is "viewed in its proper context," it is clear that "[Trevor's] injuries were not directly caused by any intentional act performed by [defendant]" and defendant's conduct was fundamentally negligent, as was Trevor's. Thus, the court had the authority to apply comparative fault principles under *People v. Millard* (2009) 175 Cal.App.4th 7 (*Millard*).

The People respond that because defendant was convicted of an *intentional* crime, rather than merely negligence, comparative fault principles are inapplicable, and the trial court therefore did not err in refusing to apply them. We agree with the People.

### A.    Background

After the jury found defendant guilty of simple battery and not guilty of battery causing serious bodily injury, the prosecutor filed a motion for victim restitution pursuant to section 1202.4. In the motion, the prosecutor argued that the acquittal of battery causing serious bodily injury did not preclude the trial court from ordering victim restitution to Trevor because the acquittal did not require the jury to conclusively

9

determine that defendant *did not cause* Trevor's injuries; instead, the jury merely determined that the prosecutor *had not proved* beyond a reasonable doubt that defendant caused Trevor serious bodily injury. The prosecutor urged the court to find by a preponderance of the evidence, from the evidence presented at trial, that defendant's battery of Trevor was a substantial factor in causing Trevor's injuries.

The trial court held two hearings regarding victim restitution. At the first hearing, on October 3, 2017, the trial court granted defendant "three years['] summary probation under the usual terms and conditions." As terms of probation, defendant was ordered to "perform 20 days['] work release, pay a $1,500 fine," and pay restitution that the court would order "as appropriate following this hearing." The court then admitted the documents attached to the prosecutor's motion for victim restitution and heard testimony from Trevor on the requested restitution amount of $46,211. In opposition, defendant argued that one portion of the restitution amount sought—an estimated $1,500 in costs for anesthesia—was unreliable. Defendant further argued that the jury's verdicts did not establish that he caused the injuries to Trevor for which restitution was sought. At the close of the hearing, the parties offered to brief the issue of whether comparative fault principles were applicable. The trial court declined, stating it would conduct its own research.

At the second hearing on restitution, held on November 28, 2017, the trial court stated: "I heard the facts in this case. I felt that [Trevor] was partly responsible for [his own] resulting injuries." But the court explained it had found no authority permitting it to apportion restitution in this case because defendant's conduct was *intentional*, not negligent. The court said, "[S]o I can't apportion. As much as I would like to do that, I can't do it." The court then told defendant, "I heard the facts. I don't think you're totally responsible in this case. Your conduct was—was intentional based on what the jury found, and I have no authority to change or award part of the responsibility to [Trevor] in

10

this case." The court later added, "I have some sympathy for you, [defendant]. I would have apportioned these damages—[a] substantial portion of it to [Trevor] in this case, but I can't do it."

Ultimately, the court ordered that defendant pay victim restitution to Trevor in the amount of $44,711. That amount included all of the expenses sought by the prosecutor except the disputed $1,500 for anesthesia, for which no evidence of actual cost was submitted. The court ended the hearing by telling defendant, "Well, look, [defendant], I regret having to do this, but I've done it. That's the order, [$]44,711, unfortunately. All right. That's all."

## B.    Legal Framework and Standard of Review

"In 1982, California voters passed Proposition 8, also known as The Victims' Bill of Rights…. Proposition 8 established the right of crime victims to receive restitution directly 'from the persons convicted of the crimes for losses they suffer.' (Cal. Const., art. I, § 28, subd. (b).)" (*People v. Giordano* (2007) 42 Cal.4th 644, 652 (*Giordano*).) Proposition 8 was not self-executing, however, and required legislative implementation of its mandates. The Legislature "enacted, and frequently amended, a bewildering array of responsive statutes." (*Giordano*, at p. 652; see generally *id.* at pp. 652–654.) One of those statutes is section 1202.4.[6]

The requirements of mandatory victim restitution are set out in section 1202.4, which declares "the intent of the Legislature that a victim of crime who incurs an economic loss *as a result of* the commission of a crime shall receive restitution directly from a defendant convicted of that crime." (§ 1202.4, subd. (a)(1), italics added.) Thus,

---

[6]    The version of section 1202.4 applicable here is not the version in effect today. We apply the version of the restitution law that was in effect on the date of defendant's crime, February 6, 2015. (*People v. Birkett* (1999) 21 Cal.4th 226, 228, fn. 1, 232, 247 & fn. 21; *People v. Martinez* (2014) 226 Cal.App.4th 1169, 1190.) Accordingly, when we refer to sections 1202.4 and 1203.1, we refer to the 2015 versions.

"in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court…. The court shall order *full* restitution *unless* it finds compelling and extraordinary reasons for not doing so and states them on the record." (§ 1202.4, subd. (f), italics added.)[7] When a trial court grants a defendant probation, any restitution imposed pursuant to section 1202.4 must be imposed as a condition of probation. (§ 1202.4, subd. (m).) "If the court finds and states on the record compelling and extraordinary reasons why a … full restitution order should not be required, the court shall order, as a condition of probation, that the defendant perform specified community service, unless it finds and states on the record compelling and extraordinary reasons not to require community service in addition to the finding that restitution should not be required. Upon revocation of probation, the court shall impose restitution pursuant to this section." (§ 1202.4, subd. (n).)

As noted, section 1202.4 requires victim restitution where a victim's economic loss occurs "as a result of" the defendant's criminal conduct. (§ 1202.4, subds. (a) & (f).) "This is language of causation." (*In re A.M.* (2009) 173 Cal.App.4th 668, 673 [analogous context of Welf. & Inst. Code, § 730.6 ("economic loss as a result of the minor's conduct")].) The "substantial factor" test for proximate causation governs whether a victim's economic loss results from the defendant's criminal conduct for purposes of mandatory victim restitution. (*People v. Lockwood* (2013) 214 Cal.App.4th 91, 102; *People v. Holmberg* (2011) 195 Cal.App.4th 1310.) That test requires only that defendant's criminal conduct be more than a negligible or theoretical cause of the injury to the victim. (*People v. Holmberg*, at p. 1321.) " 'Thus, "a force which plays only an

---

[7] This exception has been eliminated from the current scheme. The current section 1202.4, subdivision (f) requires simply that the trial court order "full restitution."

'infinitesimal' or 'theoretical' part in bringing about injury, damage, or loss is not a substantial factor" [citation], but a very minor force that does cause harm is a substantial factor [citation].' " (*Id*. at p. 1322.)

Restitution cannot be imposed pursuant to section 1202.4 for a defendant's conduct that was not part of a crime for which he was convicted. (§ 1202.4, subd. (a)(1) [requiring restitution where a victim has suffered "economic loss as a result of the commission of a crime … from a defendant convicted of that crime"]; *People v. Martinez* (2017) 2 Cal.5th 1093, 1101, 1104–1106 [§ 1202.4, "as the Courts of Appeal have uniformly held, … authorizes trial courts to order direct victim restitution for those losses incurred as a result of the crime of which the defendant was convicted"], citing *People v. Lai* (2006) 138 Cal.App.4th 1227, 1247–1248; *People v. Woods* (2008) 161 Cal.App.4th 1045, 1051–1052; *People v. Williams* (2010) 184 Cal.App.4th 142, 147.)

In summary, for crimes committed in 2015, full mandatory victim restitution is required pursuant to section 1202.4, subdivision (f) where a victim's economic loss (1) was caused by (2) a crime for which defendant was convicted, unless (3) the trial court finds a compelling and extraordinary reason not to order full restitution.

In addition to the duty to impose mandatory restitution where appropriate, a trial court granting probation has discretion to impose restitution beyond that which is required under the mandatory victim restitution scheme. (§ 1203.1, subds. (b) & (j); see *People v. Anderson* (2010) 50 Cal.4th 19, 28–29 [where restitution is not mandatory under § 1202.4, and the defendant is granted probation, the trial court has broader discretion to impose restitution]; *People v. Carbajal* (1995) 10 Cal.4th 1114, 1122 [the mandatory victim restitution scheme does not override a trial court's discretion to impose restitution as a condition of probation "where the victim's loss was not the result of the crime underlying the defendant's conviction"].) Restitution as a condition of probation under section 1203.1, may be imposed when a trial court determines it is "fitting and

13

proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer." (§ 1203.1, subd. (j).)  Restitution as a condition of probation, like other conditions of probation, " 'will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality …." ' " (*People v. Anderson*, at p. 32; *People v. Lent* (1975) 15 Cal.3d 481, 486, superseded by Proposition 8 as noted in *People v. Moran* (2016) 1 Cal.5th 398, 403, fn. 6; see *People v. Honig* (1996) 48 Cal.App.4th 289, 358–359.)  Indeed, when a trial court grants probation, its discretion is so broad that it may impose restitution based on a loss that resulted from "conduct underlying dismissed and uncharged counts," "conduct resulting in an acquittal," and even "conduct that is not in itself necessarily criminal." (*People v. Anderson*, at p. 27.)  That is so because "[p]robation is 'an act of clemency and grace' [citation], not a matter of right [citation].…  If the defendant finds the conditions of probation more onerous than the sentence he would otherwise face, he may refuse probation." (*Id*. at p. 32.)

On appeal, we review a trial court's restitution order for abuse of discretion. (*People v. Sy* (2014) 223 Cal.App.4th 44, 63.)  " ' " ' "Where there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court." ' [Citations.]" … "In reviewing the sufficiency of the evidence [to support a factual finding], the ' "power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the trial court's findings.' [Citations.]  Further, the standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt.  [Citation.]  'If the circumstances

14

reasonably justify the [trial court's] findings,' the judgment may not be overturned when the circumstances might also reasonably support a contrary finding." ' " (*Ibid.*; accord, *People v. Trout-Lacy* (2019) 43 Cal.App.5th 369, 372–373.)

### C.    Causation

#### i.    *Jury's Finding*

We begin with defendant's premise that, in reaching its verdicts, the jury necessarily found defendant *did not cause* Trevor's injuries.  This premise is incorrect.

Battery causing serious bodily injury is "any willful and unlawful use of force or violence upon the person of another" that results in "serious bodily injury …."  (§§ 242, 243, subd. (d), respectively.)  The trial court instructed the jury with CALCRIM No. 925, which read in part:  "[T]he People must prove that, one, the defendant willfully touched Trevor Eisenhut in a harmful or offensive manner; and two, Trevor Eisenhut suffered serious bodily injury as a result of the force used."

Simple battery, by contrast, consists of only the first element—"any willful and unlawful use of force or violence upon the person of another."  (§ 242.)  The trial court instructed the jury with CALCRIM No. 960, which read in part:  "[T]he People must prove that, one, the defendant willfully touched Trevor Eisenhut in a harmful or offensive manner."

These instructions made clear to the jury that the principal difference between a battery causing serious bodily injury and a simple battery is that the former results in serious bodily injury to the victim.  While the jury's verdicts might suggest that the jury found defendant *did not cause* Trevor's injuries, in reality, the verdicts do not establish that the jury necessarily made such a finding.  " '[T]he fact of an acquittal establishes only that the trier of fact entertained a reasonable doubt of defendant's guilt.' " (*People v. Towne* (2008) 44 Cal.4th 63, 84; accord, *People v. Levitt* (1984) 156 Cal.App.3d 500, 515 (*Levitt*), disapproved on another ground in *People v. Johnson* (2016) 62 Cal.4th 600,

649, fn. 6.) Unless a special verdict is reached with "specific [factual] findings … 'the jury cannot be said to have "necessarily rejected" any facts when it returns a general verdict ….' " (*People v. Towne*, at p. 86, quoting *United States v. Watts* (1997) 519 U.S. 148, 155.) Here, we cannot say the jury necessarily rejected the fact of defendant's causation.

We also note that the jury's guilty verdict on simple battery does not establish that the jury found defendant caused Trevor any injury at all. (§ 242; see CALCRIM No. 960 [a simple battery conviction does not require the touching to "have … cause[d] pain or injury of any kind"].) The jury's verdicts simply did not establish, one way or the other, whether defendant *caused* harm to Trevor.

Because we reject defendant's premise that the jury found he did not cause Trevor's injuries, we also reject his conclusion, based on that premise, that the jury must have found his conduct was *negligent*.

### ii.     Trial Court's Finding

Although the jury did not find beyond a reasonable doubt that defendant's battery caused serious bodily injury to Trevor, the trial court was not precluded from determining by a preponderance of the evidence that defendant's battery caused Trevor's injuries.

Where, as here, a defendant is acquitted of a greater offense and convicted of a lesser included offense, a trial court is permitted to find that any element of the acquitted offense is true by a preponderance of the evidence for purposes of necessary postconviction determinations. (*Levitt*, *supra*, 156 Cal.App.3d at p. 515.) In other words, absent express factual findings by the jury, the fact of acquittal on the greater count does not constrain the trial court from making necessary factual determinations related to a lesser included count of conviction.

In *Levitt*, the defendant was acquitted of murder but convicted of manslaughter. (*Levitt*, *supra*, 156 Cal.App.3d at p. 505.) Although the acquittal of murder meant that

16

the jury did not make a finding of malice beyond a reasonable doubt, the trial court was permitted to make such a finding by a preponderance of the evidence for purposes of determining a sentence within the range of permissible sentences.[8] (*Levitt*, at p. 515.) That factual conclusion by the trial court was not inconsistent with the jury's acquittal on the murder count or otherwise prohibited. (*Ibid.*)

Similarly, a trial court considering victim restitution under section 1202.4 is permitted to determine by a preponderance of the evidence whether a defendant's crime of conviction caused the victim's injuries. (*People v. Foalima* (2015) 239 Cal.App.4th 1376, 1396 ["the trial court's task [is] to determine whether the criminal conduct for which defendant was convicted was the proximate cause" of economic loss to the victim]; *People v. Sy*, *supra*, 223 Cal.App.4th at p. 63.) In doing so, the court is permitted to consider the evidence presented to the jury at trial. (See *People v. Lent*, *supra*, 15 Cal.3d at p. 488 (conc. opn. of Clark, J.) [noting that trial evidence supported restitution order by preponderance of the evidence]; *People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1543 [trial court has broad discretion in determining what evidence to consider in ordering restitution].)

Here, the jury acquitted defendant of the greater offense but convicted him of the lesser included offense. The lesser battery conviction did not include a finding of causation beyond a reasonable doubt. But the trial court made a causation finding by a preponderance of the evidence at the second restitution hearing when it found, from the evidence presented at trial, that defendant was not "totally responsible in this case" and

---

[8]     To be clear, any sentencing enhancement—that is, any determination that mandates a higher sentence—must be proved beyond a reasonable doubt. (*In re Coley* (2012) 55 Cal.4th 524, 557–558; *People v. Lewis* (1991) 229 Cal.App.3d 259, 264.) In *Levitt*, the court made factual findings on aggravating factors that guided its exercise of discretion in selecting between a mitigated, midterm, or aggravated sentence. That determination requires the trial court only to make a finding by a preponderance of the evidence. (*Levitt*, *supra*, 156 Cal.App.3d at p. 515; *People v. Lewis*, at p. 264.)

17

that Trevor was "partly responsible for [his own] resulting injuries." In other words, the court found that defendant was also *partly responsible* for Trevor's injuries. This factual finding was supported by substantial evidence. At trial, both Trevor and his girlfriend testified that Trevor was in control of the dirt bike until defendant hit his helmet. Trevor then lost control of the dirt bike, fell, and was injured when he was pinned under the dirt bike. This testimony, although contradicted by defendant's testimony, constituted substantial evidence that defendant's conduct in hitting Trevor's helmet—criminal conduct for which defendant was convicted of battery—was more than a negligible, theoretical, or infinitesimal cause of Trevor's injuries; it was a substantial factor in bringing about his injuries.[9]

### D. Apportionment

We have rejected defendant's claims that the jury necessarily found a lack of causation and therefore *negligence*, and we have concluded the trial court properly found that defendant caused Trevor's injuries when he committed the *intentional* crime of battery. Consequently, we also conclude that *Millard* does not apply.

As the parties agree, *Millard* instructs that fault can be apportioned when a defendant's conduct is *criminally negligent* and the victim's negligence contributes to his or her own injury. (*Millard*, *supra*, 175 Cal.App.4th at pp. 36–42.) The *Millard* court explained its view that it would be inequitable to require a defendant convicted of a crime amounting to criminal negligence to "reimburse a victim for economic losses that were comparatively the result or the fault of the victim's own negligence." (*Id.* at p. 39.)

---

[9] We note that the prosecutor and defense counsel identified only a single act—defendant's hitting Trevor immediately before the crash—as the basis for the charges. Because the jurors convicted on the battery count, they must have concluded that defendant hit Trevor immediately before the crash. (See *People v. Sanchez* (2001) 94 Cal.App.4th 622, 631 [where the prosecution relies upon a single act, no unanimity instruction is required because the jury could only convict based upon the single identified act].)

Since 1975, when the California Supreme Court adopted a "system of pure comparative negligence," California tort law has required an offset from a party's recovery for his or her own negligence in causing injury. (*Id.* at p. 38.) The *Millard* court reasoned that applying that approach to criminal restitution "results in a … logical and consistent approach … that, in effect, parallels a victim's usual tort civil remedy …." (*Id.* at p. 39.) Restricting a trial court's discretion to apply comparative negligence principles could result in a windfall to the victim through a greater award in restitution than the victim could obtain in a civil suit. (See *ibid.*; see also *People v. Brunette* (2011) 194 Cal.App.4th 268, 282 [application of comparative negligence principles by a trial court in a criminal negligence action is permissive, not mandatory].)

*Millard* decided that, in addition to bringing restitution awards in line with tort law, apportionment of restitution where the defendant was negligent was not inconsistent with the requirements of The Victims' Bill of Rights and section 1202.4, to compensate victims for all losses they suffer as a result of criminal activity. (*Millard*, *supra*, 175 Cal.App.4th at pp. 38–39, 41.) As the reasoning goes, economic losses caused by the victim's own negligence should not fall within the scope of section 1202.4 because they do not *result from* the defendant's criminal activity. (*Millard*, at pp. 38–39.) Where a victim's economic loss is caused by a defendant's negligent conduct and the victim's own negligence, the victim should recover only the portion of the loss for which the defendant is responsible. (See *id*. at pp. 39–41.)

The *Millard* court was explicit, however, that " 'a party who commits *intentional* misconduct should not be entitled to escape responsibility for damages based upon the negligence of the victim …. [Citations.]' [Citation.] [T]here is 'an unbroken line of authority barring apportionment [based on comparative fault] where … the defendant has committed an intentional tort [e.g., battery] and the injured plaintiff was merely negligent.' " (*Millard*, *supra*, 175 Cal.App.4th at p. 38, italics added.) Other courts have

19

come to the same conclusion. *People v. Petronella* (2013) 218 Cal.App.4th 945, which the trial court in this case relied upon in determining restitution, agreed that apportionment is not appropriate when the defendant's intentional crime causes the victim harm. (*Id.* at p. 971; accord, *People v. Brunette*, *supra*, 194 Cal.App.4th at p. 283.) Conversely, we can find no authority for the proposition that comparative negligence should be applied to reduce a defendant's financial responsibility for causing harm to a victim by committing an intentional crime. Nor do we find that any California court has concluded that comparative negligence principles permit reduction of the damages owed by an intentional tortfeasor based on the plaintiff's negligence. We decline to extend *Millard* to include situations where the defendant committed an intentional crime.

In this case, defendant was convicted of an intentional crime. The trial court found that defendant's criminal conduct was partly responsible for causing Trevor's injuries. The court's finding was supported by substantial evidence. Because the trial court was not permitted to apportion restitution using comparative negligence principles, the trial court did not err in refusing to do so.

### E. Compelling and Extraordinary Reason

This is not to say, however, that defendant is without any possible remedy. As we have explained, the version of section 1202.4 in effect in 2015 provides the trial court some discretion even when ordering mandatory victim restitution. For crimes committed in 2015, restitution to the victim is mandatory under section 1202.4, but the trial court retains discretion to order less than full restitution *if it finds a compelling and extraordinary reason to do so*. (§ 1202.4, subd. (f); *People v. Rowland* (1997) 51 Cal.App.4th 1745, 1751.) There is sparse authority, however, on what might constitute a compelling and extraordinary reason. Section 1202.4, subdivision (g) instructs that "[a] defendant's inability to pay" is *not* a "compelling and extraordinary reason not to impose

20

a restitution order, nor shall inability to pay be a consideration in determining the amount of a restitution order." (§ 1202.4, subd. (g);[10] see *People v. Draut* (1999) 73 Cal.App.4th 577, 582 [allowing an exception for financial hardship would "swallow the rule"].) The Supreme Court has explained, "[w]ithout speculating as to reasons that might qualify as 'compelling and extraordinary,' " that the exception "allows a trial court some discretion to decline to impose restitution in unusual situations specific to a particular crime, defendant, or other circumstance." (*Giordano*, *supra*, 42 Cal.4th at p. 662.)

Accordingly, the trial court was required to order *full* victim restitution *unless* it found a compelling and extraordinary reason not to impose full restitution and stated it on the record. (§ 1202.4, subd. (f).) The court concluded it "ha[d] no authority to change [the restitution amount] or award part of the responsibility to [Trevor] in this case." "As much as [it] would [have] like[d] to" order less than full restitution, it could not do so. At the close of the hearing, the court again indicated that it regretted having to order full restitution. Yet, at no point did the court discuss whether there was a compelling or extraordinary reason that would justify imposition of a lesser restitution order. (§ 1202.4, subd. (f); see *Millard*, *supra*, 175 Cal.App.4th at pp. 42–43 & fn. 16 [whether the trial court may apportion fault using comparative fault principles is a distinct issue from whether there are compelling and extraordinary reasons to impose less than full restitution].)

From this record, we believe the trial court did not understand it had the discretion to impose an amount of restitution short of the full amount if it found a compelling and extraordinary reason to do so.[11] For that reason, we must remand the matter to allow the

---

[10] The current section 1202.4, subdivision (g) provides: "A defendant's inability to pay shall not be a consideration in determining the amount of a restitution order."

[11] It appears that the parties failed to recognize the trial court's discretion as well. This may be because in 2017, when the prosecutor filed the restitution motion and the trial court held the restitution hearings, section 1202.4, subdivision (f) had been amended

court to determine whether a compelling and extraordinary reason exists to order less than full restitution. (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228–1229 [remand was required where "the record show[ed] that the trial court proceeded with sentencing on the erroneous assumption" that it did not possess the "limited discretion to award less than full victim restitution" if it stated "compelling and extraordinary reasons on the record for a reduced award"]; see *People v. Carmony* (2004) 33 Cal.4th 367, 378 ["abuse of discretion occurs where the trial court was not 'aware of its discretion' "]; *People v. Orabuena* (2004) 116 Cal.App.4th 84, 99 [failure to exercise discretion is abuse of discretion].)

We do not imply, one way or the other, whether the trial court should find that a compelling and extraordinary reason exists to permit imposition of less than full restitution. On remand, the court should not consider defendant's ability to pay in determining whether a compelling and extraordinary reason warrants imposition of less than full restitution. The court may consider the Supreme Court's guidance in *Giordano*: The compelling and extraordinary exception "allows a trial court some discretion to decline to impose restitution in unusual situations specific to a particular crime, defendant, or other circumstance." (*Giordano*, *supra*, 42 Cal.4th at p. 662.)

---

to remove the compelling and extraordinary reason exception to mandatory victim restitution. (See § 1202.4, subd. (f), as amended by Stats. 2016, ch. 37, § 3, eff. Jan. 1, 2017.) From the complete absence of any discussion of the compelling and extraordinary language in the record, we believe it is possible the court and the parties believed the 2017 version of the statute applied.

In supplemental briefing, the People suggest "the trial court's statements about having to impose full restitution were based on the jury's finding of an intentional crime and the law of causation. [Citation.] In other words, the trial court's comments were an acknowledgement, based on the jury's verdict, that a different restitution amount was not justified." We disagree with this interpretation of the record.

## **DISPOSITION**

The portion of the appeal that challenges evidence admitted at trial (the first claim of error) is dismissed for lack of jurisdiction. The $44,711 victim restitution order is vacated and the matter remanded for the trial court (if possible, to be heard before the same trial judge, Judge James A. Boscoe) to consider whether a compelling and extraordinary reason exists to impose less than full victim restitution. If the court determines no such reason exists, it shall reinstate the original victim restitution order. In all other respects, the judgment is affirmed.

LEVY, Acting P.J.

WE CONCUR:

FRANSON, J.

PEÑA, J.